# Exhibit



## NOTE

NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

OCTOBER 05, 2018　　　　WYOMISSING,　　　　PENNSYLVANIA
　[Date]　　　　　　　　　　[City]　　　　　　　　　[State]

119 ARDMORE AVE, READING, PA 19607
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $275,702.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FIDELIS MORTGAGE CORPORATION. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on DECEMBER 01, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 01, 2048, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at 1205 EAST KING STREET, LANCASTER, PA 17602 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,587.10.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all

PENNSYLVANIA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3239    2/10
(page 1 of 3 pages)

the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. EFFECT OF SURVIVAL EVENTS

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(D) of this Note;
(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d) the Maturity Date as defined in this Note;
(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
KURT D. FRITZ                   - Borrower

_____ (Seal)
WENDLOLYN M. DOUGLASS           - Borrower

_____ (Seal)
                                - Borrower

_____ (Seal)
                                - Borrower

[Sign Original Only]

Loan Originator Organization: FIDELIS MORTGAGE CORPORATION; NMLSR ID: 126791
Individual Loan Originator: JOSEPH PETER KLEPCHICK SR.; NMLSR ID: 139450

Pay to the order of:              Nationstar Mortgage LLC
Without resource
PACIFIC UNION FINANCIAL, LLC

_____
Jonathan M Grafflin
Executive Vice President

PENNSYLVANIA FIXED RATE NOTE-Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3239    1/01
(page 3 of 3 pages)

# ALLONGE TO NOTE

LOAN ▮▮▮▮▮▮▮▮

ALLONGE TO NOTE DATED OCTOBER 05, 2018

ORIGINAL LOAN AMOUNT: $275,702.00

PROPERTY ADDRESS: 119 ARDMORE AVE, READING, PA 19607

IN FAVOR OF
FIDELIS MORTGAGE CORPORATION

AND EXECUTED BY
KURT D. FRITZ and WENDLOLYN M. DOUGLASS

PAY TO THE ORDER OF
PACIFIC UNION FINANCIAL, LLC

WITHOUT RECOURSE
FIDELIS MORTGAGE CORPORATION

BY: *Ryan Eckert* / Ryan Eckert
TITLE: Processor

Allonge (MultiState) USALLONGE                    Page 1 of 1

## VA GUARANTEED LOAN AND ASSUMPTION POLICY ALLONGE AMENDING NOTE

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

THIS ASSUMPTION POLICY ALLONGE AMENDING NOTE is made this 5TH day of OCTOBER, 2018, and is incorporated into and shall be deemed to amend and supplement the Note ("Note") of the same date herewith, given by the undersigned ("Borrower") to evidence Borrower's indebtedness to FIDELIS MORTGAGE CORPORATION, its successors and assigns ("Lender") which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date and covering the property described in the Security Instrument and located at:

119 ARDMORE AVE, READING, PA 19607
[Property Address]

Notwithstanding anything to the contrary set forth in the Note, Lender and Borrower hereby acknowledge and agree to the following:

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Lender may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the unpaid balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the Lender or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already due under the Note and secured by the Security Instrument, shall bear interest at the rate herein provided, and, at the option of the Lender of the indebtedness due under the Note and secured by the Security Instrument or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c)

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the Lender or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the lesser of the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies or any maximum prescribed by applicable State law.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this Assumption Policy Allonge Amending Note.

_____  _____
KURT D. FRITZ           -Borrower   WENDLOLYN M. DOUGLASS    -Borrower

_____  _____
                        -Borrower                            -Borrower

_____  _____
                        -Borrower                            -Borrower


Pay to the Order of

Without Recourse:
Nationstar Mortgage LLC D/B/A Mr. Cooper

_____
Assistant Secretary