# Exhibit



D

  

**Mary Kozak**
**Berks County Recorder of Deeds**

Berks County Services Center 3rd Floor
633 Court Street
Reading, PA 19601
Office: (610) 478-3380 ~ Fax: (610) 478-3359
Website: www.countyofberks.com/recorder

| | |
|---|---|
| **INSTRUMENT #:** | [redacted] |
| RECORDED DATE: | 05/27/2020 01:55:07 PM |

| | |
|---|---|
| **Document Type:** MORTGAGE MODIFICATION | **Transaction #:** [redacted] |
| | **Document Page Count:** 10 |
| | **Operator Id:** dfuoco |
| **PARCEL ID(s): (See doc for additional parcel #'s)** 39439505085416 | **SUBMITTED BY:** Mr. Cooper - Post Mod 4000 HORIZON WAY IRVING, TX 75063 (972) 956-6129 |

**\* PROPERTY DATA:**

\*\* PLEASE SEE DOCUMENT OR INDEX FOR PROPERTY DATA

| FEES / TAXES: | | |
|---|---|---|
| RECORDING FEES: MORTGAGE MODIFICATION | $66.50 | |
| RECORDS IMPROVEMENT FUND | $5.00 | |
| WRIT TAX | $0.50 | |
| ADDITIONAL PAGE FEE | $24.00 | |
| PARCEL ID FEE | $10.00 | |
| **Total:** | $106.00 | |

**INSTRUMENT #: 2020017304**
Recorded Date: 05/27/2020 01:55:07 PM

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Berks County, Pennsylvania.



*Mary Kozak*
**Mary Kozak**
**Recorder of Deeds**

## OFFICIAL RECORDING COVER PAGE

Page 1 of 11

# PLEASE DO NOT DETACH
### THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**After Recording Return To:**
CoreLogic SolEx
1625 NW 136th Avenue Suite E-100
Sunrise, FL 33323
855-369-2410

**This Document Prepared By:**
Miguel Rodriguez
Nationstar Mortgage LLC d/b/a Mr. Cooper
8950 CYPRESS WATERS BLVD
DALLAS, TX 75019

Parcel ID Number: 39-4395-05-08-5416

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: **October 12, 2018**
Original Loan Amount: **$275,702.00**
New Money: **$22,169.09**

# LOAN MODIFICATION AGREEMENT

Borrower ("I/my/me"): **KURT D FRITZ and WENDLOLYN M DOUGLASS.** Dated this **23rd** day of **April, 2020**. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **Nationstar Mortgage LLC d/b/a Mr. Cooper, whose address is 8950 CYPRESS WATERS BLVD, DALLAS, TX 75019**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**October 05, 2018** and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **2018035612**, recorded on **October 12, 2018**, of the Official Records of **BERKS** County, **PA**.
Property Address ("Property"): **119 ARDMORE AVE
READING, PA 19607**
**Legal Description:**
**See Exhibit "A" attached hereto and made a part hereof;**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.




(page 1 of 9 pages)

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the VA Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
   B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **July 1, 2020** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **July 1, 2020**.

   A. The Maturity Date will be: **June 1, 2050**.



(page 2 of 9 pages)

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$296,081.75** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of **3.750%** will begin to accrue on the New Principal Balance as of **June 1, 2020** and the first new monthly payment on the New Principal Balance will be due on **July 1, 2020**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-30 | 3.750% | June 01, 2020 | $1,371.20 | $806.34 May adjust periodically | $2,177.54 May adjust periodically | July 01, 2020 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements**. I (the borrower) agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree,



(page 3 of 9 pages)

the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.



(page 4 of 9 pages)

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Loan Modification Program.

L. RESERVED FOR LOANS WHERE MERS IS PARTY TO THE TRANSACTION.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Loan Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.




(page 5 of 9 pages)

P. This Agreement modifies an obligation secured by an existing security instrument recorded in BERKS County, PA, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $273,912.66. The principal balance secured by the existing security instrument as a result of this Agreement is $296,081.75, which amount represents the excess of the unpaid principal balance of this original obligation.

Q. In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, if permitted by applicable law, I will remain liable for and bear my own attorney fees and costs incurred in connection with any such action(s).

R. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

S.
If I am a Debtor in an active bankruptcy proceeding, I understand that Court and/or Bankruptcy Trustee approval of this loan modification agreement may be required depending upon jurisdictional requirements. If approval of the loan modification is required, Lender will not honor the loan modification agreement until evidence of the required approval is provided.



(page 6 of 9 pages)

In Witness Whereof, the Lender and I have executed this Agreement.

_____    Date: 5/8/2020
KURT D FRITZ  -Borrower

_____    Date: 5/8/2020
WENDLOLYN M DOUGLASS  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

COMMONWEALTH OF PENNSYLVANIA, _____BERKS_____ County ss:

On this, the 8TH day of MAY, 20 20, before me, Notary Public, personally appeared **KURT D FRITZ and WENDLOLYN M DOUGLASS**, satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the written instrument and acknowledged that he/she/they executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My commission expires: 07/15/2023

_____
Signature of Notary

Commonwealth of Pennsylvania - Notary Seal
BRIAN KLEIN - Notary Public
Berks County
My Commission Expires Jul 15, 2023
Commission Number 1355215

BRIAN KLEIN
_____
Printed Name of Notary

NOTARY PUBLIC
_____
Title of Officer

(page 7 of 9 pages)

**Nationstar Mortgage LLC d/b/a Mr. Cooper**

By: _Miguel Rodriguez_ _____ (Seal) - Lender
Name: _Miguel Rodriguez_
Title: **Assistant Secretary**

_5-19-2020_
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX
County of Dallas

Before me _Jacob D. Valdez_ /Notary Public (name/title of officer) on this day
(Please Print Name)
personally appeared _Miguel Rodriguez_, the Assistant Secretary of Nationstar Mortgage LLC d/b/a Mr. Cooper, known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __19__ day of _May_, A.D. _2020_.

[Notary Seal: JACOB D. VALDEZ, Notary Public, State of Texas, My Comm. Expires 06-06-2020, Notary ID 130699631]

_Jacob D Valdez_
Signature of Officer

_Jacob D. Valdez_
(Printed Name of Officer)

_Notary Public_
Title of Officer

My Commission expires: _06/06/2020_

(page 8 of 9 pages)

## CERTIFICATE OF RESIDENCE

I, Miguel Rodriguez
Agent of Lender, do hereby certify that:

(1) I am employed as a __Assistant Secretary__ by Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar Mortgage LLC d/b/a Mr. Cooper"), the servicer for the mortgage loan referenced herein. I have personal knowledge of the facts contained in this certificate as follows: I am familiar with the systems of record that Nationstar Mortgage LLC d/b/a Mr. Cooper uses to record and create information related to the residential mortgage loans that it services, including the processes by which Nationstar Mortgage LLC d/b/a Mr. Cooper obtains the loan information in those systems. While many of those processes are automated, the information manually entered by Nationstar Mortgage LLC d/b/a Mr. Cooper employees relating to loans on those systems is based upon personal knowledge of the information and is entered into the system at or near the time the knowledge was acquired. These computerized records are created and maintained in the regular course of its business as a loan servicer and Nationstar Mortgage LLC d/b/a Mr. Cooper relies on the records in the ordinary course to conduct its business as a loan servicer.

(2) I obtained from Nationstar Mortgage LLC d/b/a Mr. Cooper's system of record, as described above, information relating to the mortgage loan referenced herein.

(3) The precise address of the within named lender is:

**Nationstar Mortgage LLC d/b/a Mr. Cooper**
**8950 CYPRESS WATERS BLVD, DALLAS, TX 75019**

Witness my hand this __19__ day of __May__ 2020.

_____
Signature of Agent of Lender



(page 9 of 9 pages)

## Exhibit "A"

Property Address: **119 ARDMORE AVE, READING, PA 19607**

Legal Description:
THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE COUNTY OF BERKS AND STATE OF PENNSYLVANIA: PURPART NO. 1: ALL THOSE CERTAIN THREE (3) LOTS OR PIECES OF GROUND AS SHOWN ON PLAN OF MONTROSE, LAID OUT IN APRIL 1925 BY WILLIAM H DECHANT AND SONS, FILED IN THE RECORDERS OFFICE OF BERKS COUNTY, IN PLAN BOOK NO. 2, PAGE 55, SITUATE IN THE TOWNSHIP OF CUMRU, COUNTY OF BERKS AND STATE OF PENNSYLVANIA, BEING LOTS NOS. 802, 803 AND 804, BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT: ON THE SOUTHWEST BY ARDMORE AVENUE; ON THE NORTHWEST BY LOT NO. 805; ON THE NORTHEAST BY A FIFTEEN FEET (15;) WIDE ALLEY; AND ON THE SOUTHEAST BY LOT NO. 801 CONTAINING IN FRONT ON ARDMORE AVENUE SIXTY FEET (60), AND IN DEPTH OF EQUAL WIDTH, ONE HUNDRED THIRTY FEET (130 FEET) TO SAID FIFTEEN FEET (15 FEET) WIDE ALLEY. PURPART NO. 2: ALL THOSE CERTAIN THREE (3) LOTS OR PIECES OF GROUND ON PLAN OF MONTROSE, AS LAID OUT IN APRIL 1925, BY WILLIAM H DECHANT AND SONS, AND A PLAN THEREOF FILED IN THE RECORDERS OFFICE OF BERKS COUNTY AND STATE OF PENNSYLVANIA, BEING LOTS NOS. 805, 906 AND 807, BOUNDED AND DESCRIBED AS FOLLOWS: ON THE SOUTHWEST BY ARDMORE AVENUE ON THE NORTHWEST BY CLAIR STREET ON THE NORTHEAST BY A FIFTEEN (15) FEET WIDE ALLEY, AND ON THE SOUTHEAST BY A LOT NO. 804 CONTAINING IN FRONT ON ARDMORE AVENUE SIXTY-FIVE (65) FEET AND IN DEPTH OF EQUAL WIDTH TO SAID FIFTEEN (15) FEET WIDE ALLEY, ONE HUNDRED THIRTY (130) FEET.